JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

14 CV    9505

------------------------------------------------------------------------x

TAOHN PICKETT,

                                        Plaintiffs,

-against-

CITY OF NEW YORK, DETECTIVE EDWARD
GORCZYNSKI, SERGEANT MARK SILEY, and
JOHN/JANE DOE # 1 - 10,

                                        Defendants.

------------------------------------------------------------------------x



COMPLAINT
RECEIVED
DEC 02 2014
U.S.D.C. S.D.N.Y
JURY TRIAL DEMAND
CASHIERS

## NATURE OF THE ACTION

1.    This is an action to recover money damages arising out of the violation of Plaintiff's

rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth,

Fifth, and Fourteenth Amendments to the Constitution of the United States.

3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and

1367(a).

4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5.    Plaintiff demands a trial by jury in this action.

## PARTIES

6.    Plaintiff Taohn Pickett ("Mr. Pickett") is a resident of the County of New York,

State of New York.

7.     Defendant City of New York is a municipal organization organized under the laws of the State of New York.

8.     Defendant City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant City of New York.

9.     The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10.    At all times relevant herein, Defendant Detective Edward Gorczynski ("Gorczynski") was an officer, employee, and agent of Defendant City of New York.

11.    At all times relevant herein, Defendant Gorczynski was acting within the scope of his employment with Defendant City of New York.

12.    At all times relevant herein, Defendant Gorczynski was acting under color of state law.

13.    Defendant Gorczynski is sued in his individual and official capacities.

14.    At all times relevant herein, Defendant Sergeant Mark Siley ("Siley") was an officer, employee, and agent of Defendant City of New York.

15.    At all times relevant herein, Defendant Siley was acting within the scope of his employment with Defendant City of New York.

16.    At all times relevant herein, Defendant Siley was acting under color of state law.

17.    Defendant Siley is sued in his individual and official capacities.

18.    At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were supervisors, officers, employees, and/or agents of Defendant City of New York.

19.      At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting within the scope of their employment with Defendant City of New York.

20.      At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting under color of state law.

21.      Defendants John/Jane Doe # 1 - 10 are sued in their individual and official capacities.

22.      The names John/Jane Doe # 1 - 10 are fictitious, their true names being unknown to Plaintiff at this time.

## STATEMENT OF FACTS

23.      On August 29, 2013, Mr. Pickett and was lawfully present near the intersection of St. Nicholas Avenue and 149th Street, New York, NY ("Subject Location").

24.      Mr. Pickett had just left his home to run an errand.

25.      As he was crossing the intersection at the Subject Location, an unmarked car pulled up next to him.

26.      The individual defendants jumped out of the unmarked police car and placed Mr. Pickett into handcuffs.

27.      In placing the handcuffs on Mr. Pickett, they were purposely tightened excessively by the individual defendants.

28.      Mr. Pickett demanded to know why he was being arrested and begged the individual defendants to loosen the handcuffs.

29.      The individual defendants refused to explain why Mr. Pickett was being arrested, and also refused to loosen his handcuffs.

30.    Plaintiff's arrest was without probable cause.

31.    Plaintiff's arrest was approved at the Subject Location by Defendant Siley.

32.    Mr. Pickett was then forced to stand on the sidewalk at the Subject Location for twenty minutes.

33.    As he was standing there, he was repeatedly searched by the individual defendants.

34.    No illegal contraband or other evidence of a crime was found on his person or in close proximity to Mr. Pickett.

35.    During the twenty minutes, Mr. Pickett repeatedly asked the individual defendants to loosen the cuffs and told them that they were causing him a great deal of pain and causing his right wrist to become numb.

36.    The individual defendants refused to loosen Mr. Pickett's handcuffs.

37.    After the twenty minutes passed, a prisoner van arrived at the Subject Location.

38.    Mr. Pickett was placed into the prisoner van.

39.    Mr. Picket was then driven around for thirty minutes.

40.    During that time, Mr. Pickett begged for his handcuffs to be loosened.

41.    The individual defendants refused to loosen his handcuffs.

42.    Other people were then began to be placed into the prisoner van.

43.    Sometime later, Mr. Pickett was taken to a police precinct.

44.    Upon entering the precinct, Mr. Pickett and was strip and body cavity searched by the individual defendants.

45.     Mr. Pickett and had no contraband or evidence of a crime on his person, and Mr. Pickett and had done nothing to give the individual defendants reasonable suspicion or probable cause to conduct the strip and body cavity search.

46.     The individual defendants spoke with the New York County District Attorneys' Office, individually and collectively lying to the New York County District Attorney's Office that Mr. Pickett and had violated New York Penal Law §§ 220.39(1) and 220.44(2).

47.     This common practice at the NYPD, which involves attributing illegal drugs and contraband to a person to ensure that charges stick, is known as "flaking".

48.     As set forth herein, this practice of "flaking" disproportionately affects African-Americans, including Mr. Pickett, under engrained NYPD discriminatory policies, practices, and procedures.

49.     Specifically, the individual defendants lied and stated that Mr. Pickett sold a quantity of controlled substance which was exchanged for an amount of pre-recorded buy money.

50.     In fact, no pre-recorded buy money or illegal contraband was ever recovered from Mr. Pickett.

51.     Upon information and belief, based on these fabricated allegations, the New York County District Attorney's Office forwarded to Defendant Gorczynski a Criminal Court Complaint.

52.     Upon information and belief, the Criminal Court Complaint was reviewed and then signed by Defendant Gorczynski.

53.     Upon information and belief, when reviewing and signing the Criminal Court Complaint, Defendant Gorczynski knew the allegations contained therein to be false.

54.     Upon information and belief, the executed Criminal Court Complaint was then forwarded by Defendant Gorczynski to the New York County District Attorney's Office.

55.     Legal process was issued against Mr. Pickett and, and Mr. Pickett and was subsequently arraigned.

56.     Bail was set at $7,500.00, and Mr. Pickett was held in custody pending the outcome of a Grand Jury hearing.

57.     Five days after the arraignment, Mr. Pickett's family posted bail, and he was released from Manhattan Central Booking.

58.     During the pendency of the criminal proceeding, the individual defendants forwarded false evidence to the New York County District Attorney's Office, *inter alia*, arrest reports, complaint reports, reports related to alleged pre-recorded buy money, reports related to alleged controlled substances, evidence vouchers, and property vouchers.

59.     Mr. Pickett was never arraigned, and the charges against him were dismissed on motion of the New York County District Attorney's Office on March 20, 2014.

60.     Mr. Pickett and suffered damage as a result of Defendants' actions. Mr. Pickett and was deprived of liberty, suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983*

61.     Mr. Pickett repeats and re-alleges each and every allegation as if fully set forth herein.

62.    Defendants, by their conduct toward Mr. Pickett as alleged herein, violated Mr.

Pickett's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to

the Constitution of the United States.

63.    As a direct and proximate result of this unlawful conduct, Mr. Pickett sustained the

damages alleged herein.

## SECOND CAUSE OF ACTION
*Unlawful Stop and Search*

64.    Mr. Pickett repeats and re-alleges each and every allegation as if fully set forth

herein.

65.    The individual defendants violated the Fourth and Fourteenth Amendments

because they stopped and searched Mr. Pickett without reasonable suspicion.

66.    As a direct and proximate result of this unlawful conduct, Mr. Pickett sustained the

damages alleged herein.

## THIRD CAUSE OF ACTION
*False Arrest*

67.    Mr. Pickett repeats and re-alleges each and every allegation as if fully set forth

herein.

68.    The individual defendants violated the Fourth and Fourteenth Amendments

because they arrested Mr. Pickett without probable cause.

69.    As a direct and proximate result of this unlawful conduct, Mr. Pickett sustained the

damages alleged herein.

## FOURTH CAUSE OF ACTION
*Excessive Force*

70.    Mr. Pickett repeats and re-alleges each and every allegation as if fully set forth herein.

71.    The individual defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on Mr. Pickett.

72.    As a direct and proximate result of this unlawful conduct, Mr. Pickett sustained the damages alleged herein.

## FIFTH CAUSE OF ACTION
*Denial of Substantive Due Process*

73.    Mr. Pickett repeats and re-alleges each and every allegation as if fully set forth herein.

74.    The individual defendants created false evidence against Mr. Pickett.

75.    The individual defendants forwarded false evidence to prosecutors in the New York County District Attorney's Office.

76.    In creating false evidence against Mr. Pickett, and in forwarding false evidence to prosecutors, the individual defendants violated Mr. Pickett's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

77.    As a direct and proximate result of this unlawful conduct, Mr. Pickett sustained the damages alleged herein.

## SIXTH CAUSE OF ACTION
### *Malicious Abuse of Process*

78.     Mr. Pickett repeats and re-alleges each and every allegation as if fully set forth herein.

79.     The individual defendants issued and/or caused to be issued legal process to place Mr. Pickett under arrest.

80.     The individual defendants arrested Mr. Pickett in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their unlawful stop and search of Mr. Pickett

81.     The individual defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the New York County District Attorney's Office and continuing to participate in the prosecution of Mr. Pickett.

82.     The individual defendants acted with intent to do harm to Mr. Pickett without excuse or justification.

83.     As a direct and proximate result of this unlawful conduct, Mr. Pickett sustained the damages alleged herein.

## SEVENTH CAUSE OF ACTION
### *Malicious Prosecution*

84.     Mr. Pickett repeats and re-alleges each and every allegation as if fully set forth herein.

85.     The individual defendants initiated the criminal proceedings against Mr. Pickett by issuing and/or causing to be issued legal process against Mr. Pickett.

86.     The individual defendants lacked probable cause to commence the criminal proceedings against Mr. Pickett.

87.     The individual defendants' actions were motivated by actual malice.

88.     The criminal proceedings were terminated in favor of Mr. Pickett.

89.     As a direct and proximate result of this unlawful conduct, Mr. Pickett sustained the damages alleged herein.

## EIGHTH CAUSE OF ACTION
### *Failure to Intervene*

90.     Mr. Pickett repeats and re-alleges each and every allegation as if fully set forth herein.

91.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

92.     Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

93.     As a direct and proximate result of this unlawful conduct, Mr. Pickett sustained the damages alleged herein.

## NINTH CAUSE OF ACTION
### *Monell*

94.     Mr. Pickett repeats and re-alleges each and every allegation as if fully set forth herein.

95.     This is not an isolated incident. Defendant City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Pickett.

96.    Defendant City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

97.    Defendant City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

98.    This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

99.    Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

100.    Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

101.    Active officers are given promotion opportunities that are not afforded to inactive officers.

102.    Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

103.    The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

104.    Defendant City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk

appearance tickets lawfully. There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

105. Defendant City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to proper counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

106. The failure of Defendant City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

107. Defendant City of New York is estopped from asserting that a quota/productivity policy does not exist and that this policy motivates police officers to violate the rights of individuals. *See Bryant v. City of New York*, 022011/2007 (Kings Cnty. Sup. Ct.) (jury finding that quota policy exists and that it contributed to constitutional rights violations).

108. Defendant City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

109. Defendant City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrest are made, or summonses and desk appearance tickets are issued.

110. Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

111.     These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

112.     Defendant City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

113.     As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing summonses and desk appearance tickets to substantially supplement their income through overtime pay.

114.     As noted above, "flaking" is the practice by narcotics officers of planting drugs on or near targeted and innocent individuals, and then doctoring NYPD and legal paperwork to ensure that the charges stick.

115.     This practice of flaking is used to ensure that quota and productivity goals are met by NYPD officers so that they may enjoy, among other things, financial and promotional opportunities within the NYPD.

116.     This practice is widespread within the NYPD. So much so that, at the trial of Jason Arbeeny, an NYPD veteran convicted of flaking in order to meet quotas, Supreme Court Justice Gustin Reichbach stated, ""Having been a judge for 20 years, I thought I was not naïve regarding the reality of narcotics enforcement. But even the Court was shocked, not only by the seeming pervasive scope of the misconduct, but even more distressingly by the seeming casualness by which such conduct is employed."

117.     At this same trial, Stephen Anderson, a former detective with the NYPD, testified that "flaking" is common within the NYPD, including among supervisors, detectives, and police officers.

118.    Mr. Anderson further stated that members of the NYPD pursued this practice to meet quotas, reasoning that arrestees "would be out of jail tomorrow anyway."

119.    Furthermore, the discriminatory pattern and practices by the NYPD, as well as the flaking, as set forth above, has furthered the quota and arrest policies of the NYPD.

120.    Members of the NYPD are able to meet their quotas by preying on minorities, including Mr. Pickett.

121.    By targeting these populations with impunity, members of the NYPD meet their quotas and also obtain guaranteed overtime pay as set forth above.

122.    As such, Defendant City of New York actually rewards discriminatory and illegal by members of the NYPD behavior by providing guaranteed overtime to these officers without any oversight or limitations.

123.    Defendant City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

124.    Defendant City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

125.    These policies, practices, and customs were the moving force behind Mr. Pickett's injuries.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Pickett respectfully requests judgment against Defendants as follows:

(a)    Compensatory damages against all defendants, jointly and severally;

(b)    Punitive damages against the individual defendants, jointly and severally;

(c)    Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d)    Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       December 2, 2014

Gregory P. Mouton, Jr., Esq.
Law Office of Gregory P. Mouton, Jr., LLC
*Attorney for Plaintiff*
305 Broadway, 14th Floor
New York, NY 10007
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com